UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TIMOTHY CHARLES CONNER,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>Defendant. | NO. CV-14-202-FVS<br><br>**ORDER RE CROSS MOTIONS FOR<br>SUMMARY JUDGMENT** |

**THIS MATTER** comes before the Court without oral argument based upon the parties' cross motions for summary judgment. The plaintiff is represented by Lora Lee Stover. The defendant is represented by Danielle R. Mroczek. For the reasons set forth below, the plaintiff's summary judgment motion is denied and the defendant's is granted.

**JURISDICTION**

During 2011, Timothy C. Conner applied for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI"). 42 U.S.C. §§ 401-433, 1381-1383f. The Social Security Administration ("SSA") denied his initial application for benefits and it declined to reconsider its decision. Mr. Conner exercised his right to a hearing before an Administrative Law Judge ("ALJ"). On November 28, 2012, the ALJ issued an unfavorable decision. Mr. Conner asked the Appeals Council to review the ALJ's decision, but, on May 13, 2014, the Appeals Council decided not to do so. At that point, the ALJ's decision became the final decision of the

Order ~ 1

Commissioner.  20 C.F.R. §§ 404.900(a)(5), 416.1400(a)(5).  Mr. Conner commenced this action on June 19, 2014.  42 U.S.C. §§ 405(g), 1383(c).  Both he and the Commissioner move for summary judgment. [1]

**BACKGROUND**

Timothy C. Conner was born on November 5, 1964.  Since the late 1990s, he has worked principally as a cook, although he has held construction and landscaping jobs.  (TR 72.)  As a line cook, Mr. Conner frequently lifted heavy objects.  Heavy lifting took its toll.  Eventually, he injured his back and stopped working for an extended period.  (TR 74.)  In 2009, he had knee surgery (TR 47), and, in 2011, he had back surgery (TR 50).  The surgeries have helped, but physical challenges remain.  Not only does Mr. Conner continue to experience pain when he engages in basic activities (like bending over or lifting his daughter (TR 84-86)), but also he has arthritis in his hands (possibly rheumatoid arthritis).  (TR 49-50.)

During 2009, Mr. Conner enrolled in a community college program that teaches students the art of fabricating prosthetics and orthotics (TR 64).  It takes two or three years to complete the program.  (TR 65.)  Mr. Conner received financial support for his education.   (TR 65.)  In return, he assisted fellow students 20 hours per week in a college computer lab.  (TR 65-67.)  Mr. Connor's hard work and determination paid off.  As of the fall of 2012, he had completed all but 12 of the credits he needs for his degree, and he had excelled academically.  (TR 76.)

As part of the prosthetics and orthotics program, Mr. Conner participated in a five-week practicum during the summer of 2012.  (TR 74-78.)  The practicum was intense.  Mr. Conner worked over eight hours per day (TR 77), though his arthritis hindered him (TR 76, 78).

---

[1] For the sake of convenience, this order will cite only the relevant DIB regulation unless, for purposes of clarity, it is necessary to cite the parallel SSI regulation.

Order ~ 2

Frequently, he had to put his hands under hot water in order to combat the cramping he experienced. (TR 76, 78.)

Mr. Conner is raising a daughter without assistance from her mother. (TR 63-64.) The little girl was born during 2009. (TR 63.) Typically, Mr. Conner gets up early in the morning in order to treat his arthritis, feed and clothe his daughter, and then drive her to school. (TR 79.) He takes several medications in order to cope with his physical problems. (TR 49, 51.) The medications help, but they do not provide complete relief. He must live with significant pain. (TR 96-97.)

**ALJ'S DECISION**

A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The SSA has established a five-step process for assessing disability. 20 C.F.R. § 404.1520.

A. Step One

At step one, Mr. Conner had to show he is not engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). The term "[s]ubstantial gainful activity means work that . . . (a) [i]nvolves doing significant and productive physical or mental duties; and (b) [i]s done (or intended) for pay or profit." 20 C.F.R. § 416.910. The ALJ found Mr. Conner had not engaged in substantial gainful activity since the alleged onset of disability. (TR. 28.)

B. Step Two

At step two, Mr. Conner had to show he has "a severe  medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement[.]" 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it "significantly limits" the claimant's "physical or mental ability to do

Order ~ 3

basic work activities." 20 C.F.R. § 404.1520(c).  The ALJ determined Mr. Conner has at least three (and, perhaps, four) severe impairments, *viz.*, "degenerative disk disease of the spine, osteoarthritis, inflammatory arthritis, and possible Raynaud's syndrome."  (TR 28.)

C. Step Three

At step three, the ALJ considered whether Mr. Conner is conclusively presumed to be disabled.  *See Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir.1998).  The issue is whether Mr. Conner has any impairment, or combination of impairments, that equals an impairment that is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(iii), 404.1525(a).  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir.2004).  SSA regulations state:

> The Listing of Impairments (the listings) is in appendix 1 of subpart P of part 404 of this chapter.  For adults, it describes for each of the major body systems impairments that . . . [the SSA considers] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.

20 C.F.R. § 404.1525(a).  "When a claimant meets or equals a listing, 'he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work.'"  *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir.2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990)).  The claimant bears the burden of proof at step three.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir.2012).  In this instance, the ALJ decided Mr. Conner had not demonstrated he has either an impairment, or a combination of impairments, that equals an impairment that is listed in Subpart P, Appendix 1.

D. Step Four

At step four, the ALJ evaluated whether Mr. Conner can perform his "past relevant work" given his "residual functional capacity." 20 C.F.R. § 404.1520(a)(4)(iv).  The SSA defines "past

relevant work" as work that "was done within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity."  20 C.F.R. § 404.1565(a).  Mr. Conner's residual functional capacity ("RFC") is the most he can do in a work setting despite his physical and mental limitations. 20 C.F.R. § 404.1545(a)(1).  In assessing Mr. Conner's RFC, the ALJ had to consider "all of the relevant medical and other evidence."  20 C.F.R. § 404.1545(a)(3).  Among other things, the ALJ considered Mr. Conner's statements, the records that were admitted into evidence (including the notes of a treating physician), and the opinions of a non-examining medical expert. (TR. 31-34.)  The ALJ found:

> "The claimant can perform work that does not involve lifting and/or carrying more than a maximum of 10 pounds frequently or more than a maximum of 20 pounds occasionally.  He can perform work that does not involve sitting for more than a total of 6 hours in an 8-hour workday with normal breaks or standing and/or walking for more than a total of 4 hours in an 8-hour workday with normal breaks.  The claimant can perform work that does not involve any climbing of ladders, ropes or scaffolds or more than occasional stair or ramp climbing, balancing, stooping, kneeling, crouching, or crawling.  He can perform work that does not involve more than occasional operation of foot controls, more than frequent fine and gross manipulation, or concentrated exposure to extreme cold.  Although the claimant experiences occasional to frequent, mild to moderate pain for which he takes prescription medication, he is able to remain reasonably attentive and responsive in a work setting and would be able to carry out normal work assignments satisfactorily despite the level of pain and/or effects of the medication.

 (Tr. 30.)  This is Mr. Conner's RFC.  The ALJ determined he is unable to perform his "past relevant work," 20 C.F.R. § 404.1565(a), given his RFC.  (TR. 34.)

E. Step Five

    At step five, the burden shifted to the Commissioner to provide "evidence that demonstrates that other work exists in significant numbers in the national economy that [Mr. Conner] can do,

Order ~ 5

given [his] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2).  As a general rule, there are two ways the Commissioner may satisfy her burden:  "(1) by the testimony of a vocational expert, or (2) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."  *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir.2006).  At the hearing on October 23, 2012, the ALJ considered the testimony of a vocational expert.  The ALJ asked her whether "jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity."  (TR 35.)  As the ALJ pointed out in his decision, Ms. Lapoint responded in the affirmative:

> [She] testified there are 140,000 parking lot attendant jobs in the national economy and 3200 parking lot attendant jobs in the Washington economy.  She testified there are 115,000 cashier II jobs in the national economy and 2400 cashier jobs in the Washington economy, and she testified there are 80,000 bench hand jobs in the national economy and 1500 bench hand jobs in the Washington economy. . . .  She testified the listed jobs were unskilled in character and would accommodate all of the limitations in the claimant's retained residual functional capacity.

(TR 35.)  The ALJ credited the vocational expert's testimony, concluding Mr. Conner "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  Consequently, the ALJ determined Mr. Conner is "not disabled."  (TR 36.)

## STANDARD OF REVIEW

A district court has "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  However, review is limited.  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"  *Id.*  As a result, the Commissioner's decision "will be disturbed only if it is not supported by substantial evidence or it is based on legal error."  *Green v.*

Order ~ 6

*Heckler*, 803 F.2d 528, 529 (9th Cir.1986).  "Substantial evidence" means more than a mere

scintilla, . . . but less than a preponderance."  *Desrosiers v. Sec'y of Health & Human Servs.*, 846

F.2d 573, 576 (9th Cir.1988) (internal punctuation and citations omitted).

**PLAINTIFF'S ALLEGATIONS**

Mr. Conner alleges the ALJ failed to give adequate weight to his testimony.  Had the ALJ

properly credited his testimony, says Mr. Conner, the ALJ would have found he is incapable of

performing work that requires the frequent use of his hands.  Mr. Conner insists a limitation to that

effect should have been included in his RFC.  According to Mr. Conner, the absence of such a

limitation distorted the hypothetical questions the ALJ posed to the vocational expert.  Furthermore,

in Mr. Conner's opinion, the hypothetical questions also should have included a finding he is likely

to miss more than two days of work each month as a result of his impairments.

**ASSESSING MR. CONNER'S CREDIBILITY**

A claimant's statements about his impairments, restrictions, and daily activities are

evidence.  20 C.F.R. § 416.912(b)(3).  By themselves, however, they are not enough to establish the

existence of disability.  20 C.F.R. § 416.929(a).  SSR 96-7p explains:

> No symptom or combination of symptoms can be the basis for a finding of disability,
> no matter how genuine the individual's complaints may appear to be, unless there are
> medical signs and laboratory findings demonstrating the existence of a medically
> determinable physical or mental impairment(s) that could reasonably be expected to
> produce the symptoms.

1996 WL 374186, at *1 (July 2, 1996).  This means a claimant has a two-part burden of production:

"(1) she must produce objective medical evidence of an impairment or impairments; and (2) she

must show that the impairment or combination of impairments could reasonably be expected to (not

that it did in fact) produce some degree of symptom."  *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th

Cir.1996) (explaining *Cotton v. Bowen*, 799 F.2d 1403, 1407-08 (9th Cir.1986)).

Order ~ 7

As the ALJ acknowledged Mr. Conner fulfilled his burden of production.  The ALJ found, "[C]laimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]" (TR 31.)  That being the case, the ALJ had to evaluate "the intensity, persistence, and functionally limiting effects of the symptoms" in order to determine "the extent to which the symptoms affect the individual's ability to do basic work activities."  SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996).  "This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects."  *Id.*

A credibility determination involves a careful examination of the record as a whole.  The ALJ must decide whether the claimant's "statements can be believed and accepted as true."  SSR 96-7p, 1996 WL 374186, at *4.  If there is no evidence of malingering on the claimant's part, "the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."  *Smolen*, 80 F.3d at 1283.  Here, the ALJ did not cite any evidence of malingering.  Thus, the above-described rule applies.

Broadly speaking, the ALJ set forth three reasons for discounting Mr. Conner's credibility.  For one thing, Mr. Conner "candidly acknowledged a very active lifestyle that is consistent with the performance of . . . [the] range of work [described in his RFC]." (TR 31.)  For another thing, the medical care he has received has been effective.  (TR 32.)  Finally, he has not "sought or required significant forms of treatment . . . since his alleged onset date of disability."  *Id.*  Given the preceding circumstances, the ALJ decided Mr. Conner's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment." (TR 31.)

One of the circumstances the ALJ relied upon in assessing Mr. Conner's credibility is his "very active lifestyle."  As the ALJ noted, Mr. Conner "is able to exercise by walking and lifting weights . . . ." (TR 31.)  Besides exercising, he competently cares for a young daughter with little

or no assistance from the girl's mother. *Id.* And that's not all. By October of 2012, Mr. Conner had all but completed a college program that teaches the art of fabricating prosthetics and orthotics. Despite missing classes due to his impairments, he excelled academically. Mr. Conner acknowledges his accomplishments, but he says his success was due, in part, to his professors. They recognized his physical limitations and extended a certain amount of latitude. No doubt Mr. Conner's gratitude to his professors is heartfelt and warranted. However, his success was largely a function of his own hard work; and, despite his physical impairments, he has no intention of slacking off in the future. During the hearing, he testified he is confident he "can do close to 40 hours [work per week], if not 40 hours, if I'm in the right position[.]" (TR 92.) Mr. Conner's testimony is unsurprising in light of the record as a whole, and it clearly supports the ALJ's determination he leads "a very active lifestyle." This circumstance is relevant in assessing Mr. Conner's credibility. An "ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina*, 674 F.3d at 1113. Here, the activities in which Mr. Conner engages on a regular basis involve physical movements that he could utilize in the workplace.

The other two factors cited by the ALJ in support of his credibility determination involve Mr. Conner's response to, and need for, medical treatment. On May 25, 2011, a surgeon operated on Mr. Conner's back. The surgery was successful. "By December of 2011," noted the ALJ, Mr. Conner "reported having only occasional sciatica that could be controlled with physical therapy maneuvers . . . ." (TR 32.) *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir.1999) (the effectiveness of treatment is relevant in assessing a claimant's credibility). Which is not to say Mr. Conner is symptom free. He suffers from a serious form of arthritis, as his medical records and testimony indicate. The ALJ acknowledged Mr. Conner's arthritis in formulating his RFC. The ALJ found Mr. Conner cannot perform work that involves either (1)

Order ~ 9

more than occasional operation of foot controls, or (2) more than frequent fine and gross

manipulation of the fingers and hands, or (3) concentrated exposure to extreme cold.  (TR 30.)

Mr. Conner argues the ALJ should have placed more weight upon his medical

records.  While Mr. Conner clearly is correct in stressing the importance of his medical

records, his criticism of the ALJ is unfounded.  In point of fact, the ALJ recognized he

must live with significant pain.  However, Mr. Conner's physicians are treating the pain, and the

medications they have prescribed for him are fairly effective.  He has not needed his physicians to

adjust his prescriptions very much.  Nor has he needed to go to an emergency room for treatment,

nor has he required hospitalization.  The ALJ properly considered these circumstances.  *Warre v.*

*Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir.2006) ("[i]mpairments that can be

controlled effectively with medication are not disabling").

To summarize, the ALJ provided a number of clear reasons for discounting Mr. Conner's

testimony.  Not only have Mr. Conner's surgeries provided substantial relief, but also the

medications he's taking are helping him cope with residual pain.  Consequently, Mr. Conner is

leading an active life.  He acknowledges he should be able to work as many as 40 hours per week if

he finds a job that is a good fit for him.  Given the record as a whole, the reasons provided by the

ALJ are convincing reasons for discounting Mr. Conner's "statements concerning the intensity,

persistence and limiting effects of" symptoms that are associated with his physical impairments.

**HYPOTHETICAL QUESTION**

On the second day of the administrative hearing (October 23, 2012), the ALJ posed a

hypothetical question to a vocational expert concerning Mr. Conner's employability.  The

hypothetical question was based upon Mr. Conner's RFC as formulated by the ALJ.  Mr. Conner

argues the hypothetical question was flawed in at least two respects.  To begin with, he claims it did

not adequately describe the limitations he faces.  In addition, he claims the question did not

adequately address his need to take time off from work as a result of his limitations.

      The rule regarding hypothetical questions is well established.  An ALJ may not exclude

limitations that are supported by substantial evidence.  *See Robbins v. Soc. Sec. Admin.*, 466 F.3d

880, 886 (9th Cir.2006).  At the same time, the ALJ may not include limitations for which

substantial evidence is lacking.  *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir.2005).  Here,

the ALJ's hypothetical question passes muster.  In formulating the question, he considered Mr.

Conner's testimony, including the fact he missed college classes due to his physical problems.  Mr.

Conner thinks the ALJ failed to give adequate weight to those circumstances.  As explained above,

Mr. Conner is mistaken.  The ALJ properly exercised his discretion in evaluating the record .

      **IT IS HEREBY ORDERED**:

    1.  The plaintiff's motion for summary judgment (ECF No. 14) is **denied**.

    2.  The defendant's motion for summary judgment (ECF No. 15) is **granted**.

      **IT IS SO ORDERED**.  The District Court Executive is hereby directed to file this Order,

enter Judgment accordingly, furnish copies to counsel, and close this case.

      **DATED** this 22nd day of May, 2015.

s/Fred Van Sickle
FRED VAN SICKLE
Senior United States District Judge
